UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| DONNIE ANDREWS, | Civil No. 09-2004 (PJS/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MINNEAPOLIS PARK AND RECREATION BOARD, | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge upon the Motion of the Defendant Minneapolis Park and Recreation Board to enforce the settlement agreement between Plaintiff Donnie Andrews and Defendant. The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1). For reasons which follow, the Court recommends that the Motion to Enforce the Settlement Agreement be GRANTED.

**I.    BACKGROUND**

Plaintiff commenced a suit against Defendant for alleged violations of the Minnesota Human Rights Act and the Age Discrimination in Employment Act. On November 17, 2010, Magistrate Judge Leo I. Brisbois held a settlement conference with the parties. Plaintiff appeared along with his attorneys, William Starr and Shane C. Perry, and the Defendant was represented by its counsel, Ann E. Walther, and Assistant Superintendent of Administration Karen Robinson. (Walther Aff. [Docket No. 46], ¶ 3.) Throughout the negotiations, the parties were unable to reach an agreement partly because Ms. Robinson did not have the authority of the Park Board to reach a settlement acceptable to the Plaintiff. Id. At the end of the settlement conference, Judge Brisbois received from Plaintiff and his attorneys their last, best offers

1

presented in the alternative.  Id.  Thereafter, Judge Brisbois informed the Park Board that Plaintiff had two alternative "last, best offers": (1) hire Plaintiff as a full-time Parkkeeper when the next position was available to be filled and pay $10,000 or (2) pay $30,000.  Id.  In addition, Judge Brisbois told the Park Board that the Plaintiff and his counsel strongly preferred that the Park Board accept offer one.  Id.  Subsequently, Judge Brisbois ordered the representatives of the Park Board to take the two "last, best offers" back to the Park Board to consider at its next meeting and inform him and Plaintiff's counsel of the Board's decision.  Id.  At the hearing on the present motion, the Plaintiff acknowledged that he was present when his attorneys presented their last best offers to Magistrate Judge Brisbois to deliver to the Park Board.

On December 1, 2010, counsel for the Park Board met with members of the Board and informed them of Plaintiff's two "last, best offers."  Id. at ¶ 4.  Ultimately, the Board voted to accept offer number one and agreed to hire Plaintiff as a full-time Parkkeeper when the next position was available and pay $10,000.  (Walther Aff., Ex. C.)  The Park Board's attorney informed Judge Brisbois and Plaintiff's counsel of the Board's decision.  (Walther Aff., Ex. D.)

On December 6, 2010, the Park Board's attorney drafted a settlement agreement and sent it to Plaintiff's counsel.  (Walther Aff., Ex. E.)  Two days later, on December 8, Plaintiff's attorney Shane C. Perry informed the Court that the parties had reached a settlement and could cancel the trial date.  (Walther Aff., Ex. F.)  The attorneys for both parties continued to exchange draft settlement agreements and discuss changes to the language of the document between December 8 and 10.  (Walther Aff., Ex. G-O.)  The parties worked on the final language to ensure that Plaintiff met the qualifications necessary to be hired as a Parkkeeper.  Id.  Plaintiff's attorney was concerned that if the Park Board hired Plaintiff, they could subsequently fire him without cause during the probationary period.  (Walther Aff., Ex. I.)  On the other hand, the Park

Board sought to ensure that it did not hire somebody that did not meet the minimum qualifications for the job and could have a job for life regardless of his work performance.  Id. Eventually, on December 10, the attorneys agreed on the language and the final written agreement was emailed to the Park Board by Attorney Perry.  (Walther Aff., Ex. O.)[1]  In addition, Attorney Starr agreed to obtain Plaintiff's signature on the settlement agreement.  Id.

On December 22, 2010, the Park Board's attorney notified Plaintiff's attorneys that the settlement check was available.  (Walther Aff., ¶ 6.)  The next day, Attorney Perry advised the Park Board's attorney that the Plaintiff was refusing to sign the settlement document and that Plaintiff had terminated his attorneys.  Id., ¶ 6.  In addition, Mr. Perry sent a letter to the Court advising that Plaintiff had terminated his and his co-counsel's services on December 23. (Walther Aff., Ex. Q.) At the hearing on the present motion, the Plaintiff acknowledged that although he had received from his attorney copies of all correspondence and documents in his case (both generated and received by his attorneys), he did not raise any concerns with his attorneys about how they were handling his case until sometime after December 10.

After the Park Board's attorney notified Plaintiff's attorneys that the Park Board believed the settlement was binding and that they would work to enforce the agreement, Plaintiff's attorney again contacted the Plaintiff.  Id.  However, as Plaintiff's attorney informed the Park Board's attorney, the Plaintiff remained unwilling to sign the written settlement document.  Id. As such, the Park Board filed a motion to enforce the settlement agreement on January 3, 2011.

---

[1] Eventually, the parties agreed on language regarding  Plaintiff's qualifications which provided:

> When the next full-time Parkkeeper position is open and the Park Board has the intention to fill the open position, Andrews will be hired for the position.  Andrews shall be subject to the same rules, regulations and expectations applicable to all full-time parkkeepers, including objective employment criteria.

(Walther Aff., Ex. O.)

Thereafter, since Plaintiff had terminated his attorneys, Messrs. Starr and Perry moved the Court to allow them to withdraw. The Court granted their motion on January 18, 2011, meaning that the Plaintiff now proceeds in this action pro se. (Order Granting Motion to Withdraw [Docket No. 54].) Because Plaintiff did not submit any documents or written arguments in this case, the Court relies substantially on the exhibits submitted by the Park Board in the following analysis. Its important to note that at the hearing on the present motion, the Plaintiff affirmed that he had no objections to the exhibits submitted by the Defendant, which he received by mail prior to the hearing.

## II.     DISCUSSION

A district court possesses the inherent power to enforce a settlement agreement in a case pending on the court's docket. Butler v. LeeAnn Chin's Cuisine, 2008 WL 819767 at *2 (D. Minn. March 25, 2008); Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999). Courts retain such power as a means to further its policy "favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." Butler, 2008 WL 819767 at *2 (quoting Bergstrom v. Sears, Roebuck & Co., 532 F.Supp. 923, 934 (D. Minn. 1982)).

"A settlement agreement is essentially a contract, subject to contractual rules of interpretation and enforcement." Goddard, Inc. v. Henry's Foods, Inc., 291 F.Supp.2d 1021, 1028 (D. Minn. 2003); Sheng v. Starkey Labs., Inc., 53 F.3d 192, 194 (8th Cir. 1995) ("Settlement agreements are governed by basic principles of contract law"). To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said there has been a "meeting of the minds" on the material terms of the agreement. Transclean Corp. v. Motorvac Techs., Inc., 2002 WL 31185886 at *8 (D. Minn. Sept. 30, 2002); Jallen v. Agre, 119 N.W.2d 739, 742-43 (Minn. 1963); Sheng v. Starkey Labs., Inc., 117 F.3d 1081, 1083

(8th Cir. 1997).  Courts determine the parties' intent to contract by examining the objective manifestations of the parties and not the parties' subjective, but unmanifested intent.  TNT Props., Ltd. v. Tri-Star Developers, LLC., 677 N.W.2d 94, 102 (Minn. Ct. App. 2004).  Only those terms upon which the settlement hinges are considered material terms.  Goddard, Inc., 291 F.Supp.2d at 1028 (applying Minnesota law).  However, leaving "insubstantial matters for later negotiation ... does not vitiate the validity of the agreement reached." Trnka v. Elanco Products Co., 709 F.2d 1223, 1226 n. 2 (8th Cir. 1983) (applying Minnesota law) (determining that the fact that the parties left some details for counsel to work out during later negotiations cannot be used to avoid an otherwise valid agreement).

In this case, Defendant seeks to enforce a settlement for which Plaintiff refuses to sign the written documents memorializing that settlement.  Plaintiff, appearing pro se, has not responded with any written arguments to Defendant's present motion to enforce the settlement agreement.  Based upon the statements made by the Plaintiff and his former attorneys at the hearing on the motion to withdraw, the emails between the parties' attorneys provided in the Walther Affidavit, and the Plaintiff's statements at the hearing regarding this present motion, the Court understands that Plaintiff remains subjectively concerned that he will not, in fact, obtain the Board's next open Parkkeeper position as provided for in the settlement agreement.

Even though pro se plaintiffs' arguments are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law.  See Brown v. Frey, 806 F.2d 801, 804 (8th Cir. 1986).

Here, Plaintiff's present subjective concerns do not translate into a persuasive legal reason as to why the settlement agreement lacks legal validity and does not otherwise constitute a "meeting of the minds" making the agreement enforceable.  Since the Court lacks written legal

guidance from the Plaintiff as to why the settlement agreement is not valid, the Court will analyze what it understands to be Plaintiff's two main arguments against enforcing the settlement in this case. As such, in the following analysis, the Court will examine whether a "meeting of the minds" occurred objectively in this case as to all material terms and whether the Plaintiff's attorneys possessed valid authority to settle this case.

**A.     Authority to Settle**

To the extent that Plaintiff argues that his attorney did not have authority to settle the case on his behalf, the Court finds such an argument unconvincing. It is well settled that an attorney may settle a claim with the authorization of his client. Rosenberg v. Townsend, Rosenberg & Young, Inc., 376 N.W.2d 434, 436 (Minn. Ct. App. 1985) (citing Burner Serv. and Combustion Controls Co. Inc. v. City of Minneapolis, 250 N.W.2d 224, 229 (Minn. 1977)).

In this case, significant evidence in the record supports a finding that Plaintiff's attorneys had full and present authority to settle the case prior to the time they were discharged by Plaintiff. First, Magistrate Judge Brisbois issued an order setting the date of the settlement conference which required that "each party, armed with full settlement discretion" be present. Accordingly, the Plaintiff was present at the settlement conference himself and worked with his attorneys to formulate the settlement offer in this case which eventually became the settlement agreement at issue after the Defendant accepted the terms of Plaintiff's offer.

Second, as noted above, the Plaintiff acknowledged at the hearing regarding the present motion that he was copied on all correspondence both to and from his attorneys regarding this case. Thus, he was aware of the Park Board's acceptance of one of his two alternative last best offers and the subsequent negotiations taking place between the parties' attorneys regarding minor language within the written settlement document. Furthermore, he was copied on the

letter sent by Mr. Perry on December 8 to the Court stating that settlement had been reached and the pending trial date could be cancelled.  (Walther Aff., Ex. F.)  Two days later, on December 10, the final written document memorializing the settlement was sent by Attorney Perry to the Park Board and was ready for final signature by the parties.  Then, Attorney Starr brought the document to Plaintiff for his signature.  At this time, Plaintiff, as acknowledged at the hearing regarding the present motion, objected to the document's content for the first time during a meeting with his attorneys and refused to sign the agreement.  However, Plaintiff in no way attempted to thwart his attorneys' settlement authority until after he received the final written document outlining the settlement agreement despite his prior knowledge that a settlement had been reached as evinced through copies of the correspondence he received from his attorneys.

Third, throughout the parties' contacts subsequent to the settlement conference, Plaintiff's attorneys continued to speak and act as though they had full settlement authority. "Where a client has created the appearance that his attorney has authority to settle a case and the attorney exceeds his authority in some way, if the adversary relies on the settlement to its detriment, the client may be estopped to deny his attorney's authority." Barry, 172 F.3d at 1015; see also Austin Farm Center, Inc. v. Austin Grain Co., 418 N.W.2d 181, 186 (Minn. Ct. App. 1988); Bergstrom v. Sears, Roebuck & Co., 532 F.Supp. 923, 933 (D. Minn. 1982) (applying federal law); see generally McGee v. Breezy Point Estates, 166 N.W.2d 81, 89 (1969).  Here, Plaintiff's attorneys represented to Magistrate Judge Brisbois that they had authority to settle the case at the settlement conference, and Plaintiff never took any action indicating to Magistrate Judge Brisbois or Defendant that his attorneys did not have authority to settle the case on the terms of his "last best offers" during or after the settlement conference at the time a settlement was reached on the material terms, up to and including the time on December 22nd when the

Defendant had prepared the settlement check for delivery to the Plaintiff. In addition, during all relevant times, Plaintiff's attorney continued to represent to the Defendant's attorney that he was in contact with the Plaintiff. Defendant's attorney and the Defendant relied on the attorneys' authority to settle and undoubtedly altered the preparations for trial based on the objective belief that a settlement had been reached. Therefore, this Court finds that Plaintiff's attorneys at all relevant time possessed the authority to settle this case.

### B. Meeting of the Minds

In addition, the Court understands the Plaintiff to be arguing that no true meeting of the minds regarding the settlement agreement existed between the parties because the Plaintiff did not agree to the terms as stated in the final draft of the written document memorializing the settlement. However, here, despite Plaintiff's refusal to sign the written document memorializing the settlement reached, a valid meeting of the minds objectively existed. After it became clear at the November 17, 2010 settlement conference that the Defendant's attorney did not have final authority to then settle the case on terms agreeable to the Plaintiff, Magistrate Judge Brisbois directed the Plaintiff to formulate his last, best offer and ordered the Defendant's attorney to take the Plaintiff's final two alternative offers to the Park Board to consider at its next meeting. Plaintiff admitted on the record at the hearing on this present motion that he was present at the settlement conference and that the settlement conference concluded in fact with two final offers being submitted by him to the Defendant. The Defendant's attorney followed the Court's instructions and the Park Board agreed to accept the Plaintiff's preferred offer: that he receive appointment to the next available position as Parkkeeper and be paid $10,000. The offer thus made at the conclusion of the settlement conference demonstrated objectively that Plaintiff had a present intent to thereafter be bound by his last offer if it was accepted. Thus,

Plaintiff presented an offer in this case, his alternative "last, best offers," one of which the Defendant accepted without qualification. Furthermore, even though the settlement was not reduced into writing at that time, it was still enforceable. Under Minnesota law, which favors the settlement of disputes, a Court may enforce a settlement agreement that contemplates the execution of a later written document. Butler, 2008 WL 819767 at *2 (finding that a court may enforce a settlement agreement that contemplates the execution of a later written agreement).

In addition, the Court interprets Plaintiff to be arguing that the settlement agreement was later altered to affect a material term because the written settlement agreement did not guarantee him the next open job as a Parkkeeper with the Park Board as he subjectively understood the settlement offer. However, this objection was not raised by the Plaintiff until after the language of the written document memorializing the settlement agreement had been finalized by counsel for the Plaintiff (who had not yet been discharged by Plaintiff). The settlement agreement finalized on December 10 by both parties' attorneys required only that the Plaintiff meet the minimum qualification requirements for the job. In addition, it also provided that the Plaintiff would be simply subject to the same employment rules, regulations, and expectations applicable to all other full-time parkkeepers. The additional language in the written document in no way altered the material terms of the settlement agreement. These limitations were merely details of the agreement left for counsel to work out later because they simply set minimal conditions that Plaintiff must meet in order to obtain the next open Parkkeeper position. The steps Plaintiff needed to take in order to obtain the position were a minor detail and settlement did not "hinge" upon them. Goddard, Inc., 291 F.Supp.2d at 1028. Furthermore, attorneys for both parties had mutually addressed any concerns that existed regarding Plaintiff's future employment. Even if the language regarding Plaintiff's eligibility for the position did constitute a material term,

attorneys for both parties, who then continued to enjoy settlement authority, had agreed to the terms as ultimately written. The fact that Plaintiff himself did not sign the resulting written agreement does not mean that no settlement was reached.

The Court finds Jackson v. Fed. Reserve Emp. Benefit Sys., 2009 WL 2982924 (D. Minn. Sep. 14, 2009) especially instructive to this case. In Jackson, plaintiff's counsel initiated settlement discussions via email with the defendant where he represented that he had settlement authority from his client. The parties negotiated throughout a two month period before the defendant offered to settle the case for $15,000 "subject to written settlement with confidentiality, non-disparagement, release, no re-employment-all the customary terms." 2009 WL 2982924 at *1. Plaintiff's attorney then asked if the offer could be increased to $17,500. Id. Defense counsel responded that he could not increase the offer. Id. Thereafter, Plaintiff's attorney wrote back, "Deal . . . go ahead and draft the paperwork." Id. Counsel for both sides continued to exchange draft emails working to a final written agreement. Id. Finally, a final written agreement was reached. Id. However, Plaintiff refused to sign it and terminated her attorney. Id. The Court upheld the settlement because courts can "enforce a settlement agreement that contemplates the execution of documents at a later time, leaves insubstantial matters for later negotiation and/or that does not expressly resolve ancillary issues." Id. at *2.

Like the parties in Jackson, here the Plaintiff and the Defendant, through authorized counsel, reached a settlement agreement which they planned to memorialize in writing at a later time. Plaintiff presented the Defendant with an offer at the settlement conference which the Defendant subsequently accepted through a phone call. Then, the parties' attorneys began to work on drafting a final written document with the terms of the settlement. Similar to the "customary terms" including confidentiality, non-disparagement, release and no-reemployment

which were to be negotiated later in Jackson, in the present case, the parties worked out details regarding the exact terms of Plaintiff's future employment. At no time did either party make any representations that the terms regarding qualifications for the Parkkeeper position would in any way cause the deal to fall apart. Instead, the parties continued to exchange drafts which demonstrated that they already reached a settlement agreement but were just hammering out the remaining minor, ancillary details.

For these reasons, the Court finds that the parties reached a meeting of the minds sufficient to create a valid, enforceable settlement agreement.

## III. CONCLUSION

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendant's Motion to Enforce the Settlement Agreement [Docket No. 43] be GRANTED;

Dated: February 23, 2011                                         s/
                                                                                      Leo I. Brisbois
                                                                                      U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 9, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the

objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.